UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TERRY THOMAS | ) | |
|---|---|---|
| *Plaintiff-Petitioner*, | ) | |
| | ) | NO. 09 C 3877 |
| v. | ) | (03 CR 902) |
| | ) | |
| UNITED STATES OF AMERICA | ) | Hon. Rebecca R. Pallmeyer |
| *Defendant-Respondent*, | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Terry Thomas was convicted by a jury of possessing and conspiring to possess heroin and crack cocaine with intent to distribute. He was sentenced as a career offender to a term of 360 months' imprisonment. In 2008, the Court of Appeals for the Seventh Circuit affirmed Thomas's convictions and sentence. Thomas has now filed a *pro se* motion to vacate his conviction pursuant to 28 U.S.C. § 2255, arguing that his attorneys' failure to file a motion to suppress, failure to object to the admission of the mug shots of his co-conspirators, and failure to obtain various forms of impeachment evidence, amounted to ineffective assistance of counsel in violation of his Sixth Amendment rights. Thomas also advises the court that earlier convictions that supported the sentencing enhancement are on appeal. For the reasons set forth below, Thomas's motion is denied.

## BACKGROUND

The facts set forth below are drawn from the Seventh Circuit's opinion, *see United States v. Thomas*, 520 F.3d 729 (7th Cir. 2008), except where noted.

**Factual Background**

In 1999, Chicago police officers investigating open-air drug sales in a south side neighborhood observed Petitioner, Terry Thomas, directing street-level drug trafficking on four separate occasions. *Thomas*, 520 F.3d at 732. The first of these occasions took place on September 5, 1999, when police officers set up surveillance on the 800 block of West 50th Place.

One of the officers, positioned inside an abandoned building, saw Thomas and two others working in concert to sell drugs to passing motorists and pedestrians. Thomas and one of his accomplices solicited potential buyers by shouting "rocks," a street name for crack cocaine, at passersby. Thomas would direct those who approached him to a third participant, a woman, who stood a few feet away ready to make the sales. After some time, apparently concerned that the police might be watching these transactions, Thomas ordered his accomplice to check the abandoned building in which the officer was hiding. The accomplice entered the building and was arrested by the officer inside. The police also arrested Thomas, but promptly released him.

A second episode took place two days later, on September 7, when Chicago police officers patrolling the same block of West 50th Place observed several people forming a queue in an alley. The police drove into the alley and overheard Thomas yelling the words "rocks" and "blows," the latter term being a street name for heroin. When Thomas saw the police officers, he yelled "four-seven," a warning of the presence of police. The police detained and searched Thomas, but found no contraband and did not arrest him.

The third episode occurred on October 22, 1999, when Chicago police officers once again set up narcotics surveillance on the 800 block of West 50th Place. An officer positioned in an abandoned building observed Thomas shouting the words "rocks" and "blows" to persons in passing cars and directing them to a woman who would in turn make the sales. A young man standing on the sidewalk noticed the officer's presence in the building and alerted Thomas, who in turn alerted the woman. She ran from the scene. Police efforts to locate her were unsuccessful. *Id.* Thomas was again arrested and again later released. (Arrest Report, Ex. 1 to Petitioner's Traverse.)

The fourth and last episode took place two weeks later, on November 3. (Trial Tr. at 128-29.) On that occasion, undercover police officers posing as construction workers positioned themselves in the back of a school bus parked close to the 800 block of West 50th Place. (*Id.* at

2

134-36.) The officers watched as a man, later identified as Michael War, engaged in conversation with passersby and directed them to another man sitting on a nearby porch. *Thomas*, 520 F.3d at 732-33. The man sitting on the porch, later identified as Tyrone Thompson, carried out the drug sales. *Id.* at 733.

After observing Thompson make several sales, the officers saw Thomas approach War and ask him, "are you out?" War asked Thompson the same question. Thompson said he was out (that is, had run out of his supply of narcotics), and War related this to Thomas, who directed War to meet him by the yard. *Id.* The officers observed as War walked toward a wooden fence approximately 15 feet from the officers and waited there while Thomas walked through the backyard of the house and retrieved a large bag from underneath a shrub. (Trial Tr. at 156-57.) Thomas reached into the bag, pulled a smaller golf-ball-sized bag from the larger bag, and returned the large bag to the shrub. He then stepped to the fence and handed the small bag over the fence to War. (*Id.*) The police witnessed one additional transaction in which Tyrone Thompson made a sale of a small item retrieved from this new bag. (*Id.* at 169.) At that point, the police terminated the surveillance and proceeded to make arrests. (*Id.*)

When Thompson saw the police approaching, he tossed the plastic bag he was holding to the ground. (*Id.* at 172.) Police recovered the bag and found inside it 20 blue-tinted bags containing heroin. (*Id.* at 173.) The police arrested War, Thompson, and Thomas. (*Id.* at 170-71; 174; 178.) One of the officers returned to the back yard where he had seen Thomas retrieve the larger plastic bag from beneath a shrub. (*Id.* at 175.) The officer "flipped" the fence, entered the backyard and recovered the bag, which was found to contain heroin and crack cocaine. (*Id.* at 177.) Officers later performed a search of the house, reportedly with the permission of the woman who answered the door, but found nothing incriminating inside. (*Id.* at 179-80.)

**Procedural History**

Based on the November 3 incident, Thomas was indicted on one count of possessing heroin and in excess of 5 grams of crack cocaine with intent to distribute. *Thomas*, 520 F.3d at 733. By way of superseding indictments, the government added a conspiracy count alleging that from August to November 1999, Thomas conspired with War, Thompson, and unnamed others to possess heroin and in excess of 5 grams of crack cocaine with intent to distribute. Thomas was convicted by the jury on both counts and sentenced to 360 months' imprisonment. *Id.*

Thomas filed a direct appeal seeking reversal of his conviction on the grounds that (1) the trial evidence established multiple conspiracies, rather than the single charged conspiracy; (2) the federal prosecution was vindictive because the grand jury returned the indictment against Thomas while he faced state charges for the same conduct; (3) the prosecutor's closing remarks about the seriousness of the case and the "burden" of living in a drug-infested neighborhood deprived him of a fair trial; and (4) the district court misapplied the career offender sentencing guidelines and imposed an unreasonable sentence. *Id.* at 731-32. The Court of Appeals rejected these arguments and affirmed Thomas's convictions and sentence on March 24, 2008. *Id.* at 732. No petition for certiorari was filed.

Thomas delivered this motion to prison officials to be mailed on June 12, 2009, within one year of the expiration of the date in which Thomas could seek certiorari. (Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereinafter "Petitioner's Motion") at 1, 6). The government concedes it is deemed timely. *Cf. Houston v. Lack*, 487 U.S. 266, 270, 108 S. Ct. 2379, 2382 (1988) ("mailbox rule"); *see also Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999). Nor has Petitioner waived his claim by failure to raise it on direct appeal; an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003); *Wadley v.*

4

*Gaetz*, No. 08-3939, 348 Fed.Appx. 148, 151 (7th Cir. Aug. 6, 2009) ("an ineffective assistance of counsel claim is not waived for failure to raise it on direct appeal"). The court therefore proceeds to the merits of his petition.

## DISCUSSION

Relief under 28 U.S.C. § 2255 is available only upon a showing that the district court imposed a sentence "in violation of the Constitution or laws of the United States." *Shell v. United States,* 448 F.3d 951, 954 (7th Cir. 2006) (citing *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000)); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). A district court may dismiss a motion filed pursuant to § 2255 without conducting a hearing if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004); *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005) (a district court is entitled to consider "all the circumstances in the record in determining whether a hearing should be afforded") (internal citations omitted).

**I.    Ineffective Assistance of Counsel**

Thomas claims here that he was denied the effective assistance of counsel in several ways: he contends that his attorneys failed to file a motion to suppress prejudicial evidence; failed to object to the display of the "mug shots" of his co-conspirators; and failed to obtain evidence necessary to impeach the testimony of the police officers. An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To establish such a claim, a petitioner must first show that counsel's performance was deficient, meaning that the representation fell below an objective standard of reasonableness. 466 U.S. at 687-88, 104 S. Ct. at 2064. Second, petitioner must establish that his attorney's deficient performance prejudiced his defense. 466 U.S. at 687, 693, 104 S. Ct. at 2064, 2067. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial–that is, that there is a reasonable probability that, but for counsel's

5

unprofessional error, the result of the proceeding would have been different. 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068. Failure to make the required showing as to either of the two prongs, deficient performance or sufficient prejudice, defeats the ineffectiveness claim. 466 U.S. at 700, 104 S. Ct. at 2071. Judicial scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that such performance falls within the wide range of reasonable professional assistance. 466 U.S. at 689, 104 S. Ct. at 2065. The court evaluates Thomas's three claims of ineffective assistance under this forgiving standard.

### A. Failure to File Motion to Suppress Evidence

Thomas claims, first, that his attorneys were ineffective in failing to move to suppress the evidence retrieved by police from the backyard of his grandmother's house on November 3, 1999. (Memorandum in Support of Petitioner's Motion at 6-10.) When counsel's failure to litigate a Fourth Amendment claim is the basis for a claim of ineffectiveness, the petitioner must also show that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the improperly-obtained evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986); *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to file a motion to suppress, we have required that a defendant prove the motion was meritorious.").

Thomas contends that Officer John Clark's warrantless search of the backyard of his grandmother's house, resulting in seizure of heroin and crack cocaine, violated the Fourth Amendment. (Memorandum in Support of Petitioner's Motion at 6-7.) The backyard is part of the curtilage of the home, according to Thomas, protected against warrantless search. (*Id.* at 8.) It is uncontested that Officer Clark did not have a warrant to conduct a search of the backyard. (Government's Response to Defendant's Pro Se Motion at 14.) And the court is satisfied that Fourth Amendment protection extends to the backyard, part of the curtilage of the house. *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742 (1984) (Fourth Amendment extends to the

6

land "immediately surrounding and associated with the home"); *see also United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002). As set out in *United States v. Dunn*, four factors are relevant in determining the scope of the curtilage: (1) the proximity of the area at issue to the home itself; (2) whether the area is inside an enclosure surrounding the house; (3) the nature of the use to which the area is put; and (4) steps taken by the resident to protect the land in question from observation. 480 U.S. 294, 301, 107 S. Ct. 1134, 1139 (1987). The central consideration is whether the area is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection. 480 U.S. at 301, 107 S. Ct. at 1140*; see Bleavins v. Bartels*, 422 F.3d 445, 452 (7th Cir. 2005) ("Areas that are intimately connected with the activities . . . of the home include, for example, backyards.") (citations and internal quotations omitted).

The backyard of Thomas's grandmother's house meets that test. The yard is immediately proximate to the home; the officer testified that he "'flipped' the fence and went right to that plastic bag that was alongside of the stairs." (Trial Tr. at 175.) The officer also testified, referring to the location of the bag he recovered, that "there are three or four steps and it's leading to the back door." (*Id.* at 157; *see also* Ex. 2a to Petitioner's Traverse.) Apart from Thomas's apparent use of the stairs as a storage area, there is no evidence that the backyard was put to any use other than home-related activities. Significantly, the residents took steps to prevent observation into the backyard by erecting a 5' 9" fence around the area. (Trial Tr. at 164.)

Indeed, the government does not challenge Thomas's contention that the backyard is part of the curtilage. Instead, the government contends that the evidence was admissible under the "plain view" exception to the Fourth Amendment. (Government's Sur-Response to Petitioner's Traverse at 2.) There are four requirements for application of that exception: (1) the item seized must be in plain view; (2) its incriminating character must be immediately apparent; (3) the enforcement officer must be lawfully located in a place from which the object can be plainly seen; and (4) the officer must have a lawful right of access to the evidence itself. *Califor nia v. Horton*, 496

7

U.S. 128, 136-37, 110 S. Ct. 2301, 2308 (1990); *see also United States v. Klebig*, No. 06-3663, 228 Fed. Appx.613, 619 (7th Cir. July 10, 2007) (citing *Horton*).

With respect to the first three prongs of this test, the government is on solid ground: First, the items recovered from the backyard were in plain view. The officers observed Thomas retrieving a bag from under a shrub and delivering it to Michael War. (Trial Tr. at 162-63.) "What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511 (1967). And observations of areas within the curtilage from locations outside the curtilage are generally permissible. *See, e.g., United States v. Hedrick*, 922 F.2d 396, 399 (7th Cir. 1991) (no reasonable expectation of privacy in garbage cans placed in a driveway); *California v. Ciraolo*, 476 U.S. 207, 213-14, 106 S. Ct. 1809, 1812-13 (1986) (warrantless aeirial observation of fenced-in backyard did not violate the Fourth Amendment). Thomas cannot claim he had a reasonable expectation of privacy when a neighbor, a passerby, or the police could observe his actions from a distance.

Second, the incriminating character of the items seized was immediately apparent. *Compare United States v. Cellitti*, 387 F.3d 618, 624 (7th Cir. 2004) (seizure of keys was improper where there was no basis for the conclusion that keys were incriminating). Immediately before the search, the officer had observed several transactions taking place in which War and Thompson were involved; he had heard Thomas ask War whether he "was out"; and he had witnessed Thomas supplying his accomplice with what appeared to be drugs (Trial Tr. at 168), providing probable cause to believe that the bag contained contraband.

Third, the officer himself was lawfully in a location from which the item could be seen for purposes of *Horton*. An officer's trespass does not generally impact Fourth Amendment rights, *see, e.g., United States v. Tolar*, 268 F.3d 530, 531-32 (7th Cir. 2001), and does not here, where the officer was present on a bus lot–not on property protected by Thomas's own Fourth Amendment rights.

The fourth factor of the *Horton* test–the officer's right of access to the evidence–is at first blush more troublesome. In *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S. Ct. 2022, 2039 (1971), the Supreme Court explained that even where the object in plain view is contraband, the police may not enter private premises and make a warrantless seizure. *See Tolar*, 268 F.3d at 532 (though police do not violate the Fourth Amendment by trespassing on private property, crossing the threshold of a home is a different matter). The officer in this case failed to obtain either a search warrant to enter the premises, or consent from the residents of the house to enter their backyard. "No amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Horton*, 496 U.S. at 137, 110 S. Ct. at 2308 (citations and internal quotations omitted). In this case, the officer may well have had the time to secure a warrant to enter the premises, and the government has not suggested that exigent circumstances were present.

Fourth Amendment rights are personal rights, however, which may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S. Ct. 421, 425 (1978). Thus, Thomas has no standing to challenge the introduction of damaging evidence secured by the search of another person's property. 439 U.S. at 134, 99 S. Ct. at 425; *United States v. Carter*, 573 F.3d 418, 426 (7th Cir. 2009) (defendant cannot assert someone else's privacy interest). In this case, the warrantless search was of Thomas's grandmother's home. He argues that he resided at that home at the time in question, (Memorandum in Support of Petitioner's Motion at 7, 8), but the evidence contradicts that argument. Following his arrest on November 3, 1999, Thomas provided a different address as his residence, that of 5029 S. Shields in Chicago. (*See* Arrest Report, Ex. 1 to Government's Sur-Response to Petitioner's Traverse.) The address listed in Thomas's driver's license is not that of his grandmother's house either. (*See* Petitioner's Response to Government's Sur-Response at 2.) Moreover, a young female who led the police into Thomas's grandmother's house stated that Thomas "didn't stay there. He just visits." (Trial Tr. at 292.)

Citing affidavits submitted by a cousin and by his grandmother, Thomas suggests that he was in fact an overnight guest at his grandmother's house, entitled to claim Fourth Amendment protections as recognized in *Minnesota v. Olson,* 495 U.S. 91, 96-97, 110 S. Ct. 1684, 1688 (1990). If Thomas was in fact an overnight guest, however, he would nevertheless have no reasonable expectation of privacy in the curtilage of the house. *See United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991) (tenant could not assert an expectation of privacy in common areas of an apartment because other tenants used that space and could admit as many guests as they pleased); *United States v. Villegas*, 495 F.3d 761, 768 (7th Cir. 2007) (no legitimate expectation of privacy in the common hallway of a duplex in which defendant resided). While the need for a guest's privacy is reasonable, the expectation of privacy does not extend to those areas of the house–the backyard, for example–in which the guest's privacy would not likely be respected. *See Olson*, 495 U.S. at 99, 110 S. Ct. at 1689.

Finally, Thomas argues that the officers who arrested him unlawfully seized the keys to his grandmother's house and conducted a warrantless search of that residence. (Memorandum in Support of Petitioner's Motion at 7-8.) Again, the evidence is inconsistent with this assertion; there was no evidence that the officers seized Thomas's keys, no evidence that he had keys to his grandmother's house, and no showing that the officers used keys at all. Instead, they testified that they had obtained consent to search the home. (Trial Tr. at 179.) In any event, Thomas has not argued that the keys were used as evidence against him; nor was any evidence seized inside the home.

The court concludes Thomas has no claim of a Fourth Amendment violation. Even if he did, his attorneys' failure to move to suppress evidence would not support § 2255 relief. *See Kimmelman*, 477 U.S. at 382, 106 S. Ct. at 2586. To prevail under the *Strickland* standard, Thomas must show not only deficient performance, but also that the performance prejudiced his defense. Thomas's attorneys proceeded on an alibi defense during trial; his case rested on the argument

that the person whom the officers saw in the backyard of Thomas's grandmother's house was not Thomas but someone else. His attorneys could have reasonably decided that filing a motion to suppress would be inconsistent with their strategy to proceed on an alibi defense. When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he does so for tactical reasons rather than through sheer neglect. *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 5 (2003). Thomas evidently agreed with his attorneys' alibi strategy; indeed, he continues to assert that he was not the person in his grandmother's backyard. (*See* Memorandum in Support of Petitioner's Motion at 19.)

The court concludes, further, that counsel's decision to pursue an alibi defense rather than seeking to suppress evidence was a strategic decision that, in light of the remaining evidence at trial, did not prejudice the outcome. Evidence at trial showed that Thompson tossed a bag to the ground when he saw the police officers approaching, and that it was the same bag that officers had seen Thomas deliver to Michael War. The bag contained heroin and was properly introduced at trial. The police had also seen Thomas involved in narcotics transactions on three prior occasions. Thomas's claim of ineffective assistance of counsel on the basis of his attorneys' failure to file a motion to suppress is dismissed.

      **B.**      **Failure to Object to Showing of Mug Shots**

Thomas claims, further, that his attorneys were ineffective because they failed to object to the admission of the mug shots of War and Thompson taken following their arrest on November 3, 1999. (Memorandum in Support of Petitioner's Motion at 11.) In Thomas's view, the mug shots were unfairly prejudicial because they invited the jury to decide the case on the basis of "guilt by association." (*Id.* at 12.) The claim of ineffective assistance is again evaluated under the highly deferential test set forth in *Strickland*.

Most relevant evidence is, of course, prejudicial; only evidence that is *unfairly* prejudicial may be excluded. *See, e.g., United States v. Collins,* 604 F.3d 481, 487 (7th Cir. 2010)*; United*

*States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996). Evidence is unfairly prejudicial if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented. *Curry*, 79 F.3d at 1496, citing *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995). The photos of Thomas's co-conspirators introduced as evidence at his trial do not meet the *unfairly* prejudicial standard.

The jury heard evidence that both Thompson and War were arrested along with Thomas on November 3, 1999. (Trial Tr. at 171-74.) The jury knew that Thomas was charged with conspiring to possess and distribute drugs and that the other members of the alleged conspiracy were Thompson and War. The photos served the purpose of putting a face to the names the jurors heard several times throughout the trial. Thomas cites *Estelle v. Williams,* 425 U.S. 501, 96 S. Ct. 1691 (1976) (Memorandum in Support of Petitioner's Motion at 13), but that case has little relevance here. In *Estelle*, the Court recognized that it may be unfairly prejudicial for the defendant in a criminal case to wear prison clothes at his trial. 425 U.S. at 503, 96 S. Ct. at 1692. Thomas did not wear prison attire during his trial (*see* Trial Tr. at 85), nor were his co-conspirators in prison attire in their mug shots. (See Exhibits I, J to Petitioner's Motion.) As the *Estelle* Court observed, "'[n]o prejudice can result from seeing that which is already known.'" 425 U.S. at 507, 96 S. Ct. at 1694, *citing United States ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973). In this case, the jury heard the officer's testimony that War and Thompson were involved in the drug sales that took place on November 3, 1999, and that they were arrested. Nothing about the introduction of the mug shots unfairly prejudiced Thomas.

Relying on decisions of the Fifth and Sixth Circuit Courts of Appeals, Thomas urges that "evidence that demonstrates guilt by association such as criminal history is irrelevant to the question of guilt." (Memorandum in Support of Petitioner's Motion at 11; 13.) *See United States v. Cunningham*, 804 F.2d 58, 60-62 (6th Cir. 1986); *see also United States v. Taylor*, 210 F.3d 311, 317-18 (5th Cir. 2000). In each of those cases, the prosecution introduced evidence that the

defendant's co-conspirator had been convicted in the past on similar charges. Nothing of that kind occurred here; the government made no reference to any prior convictions of War or Thompson, nor did the government suggest that Thomas associated with any convicted persons. The mug shots simply confirmed that Thompson and War were arrested on November 3, 1999. In any event, if the court were to conclude the mug shots were unnecessary and even prejudicial, counsel's failure to object would not meet the test under *Strickland.* The photos were not inconsistent with Petitioner's defense strategy of alibi, and his attorneys' failure to object does not amount to deficient performance given the strong presumption that counsel was acting within a range of reasonableness in choosing that strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Nor can Thomas show that he was prejudiced by counsel's failure to object, in light of the substantial weight of the remaining evidence of his guilt.

The claim of ineffective assistance in counsel's failure to object to the mug shots is dismissed.

### C. Failure to Offer Various Forms of Impeaching Evidence

Thomas finally argues that his attorneys' failure to obtain certain forms of impeaching evidence against the testifying police officers at his trial amounted to ineffective assistance. (Memorandum in Support of Petitioner's Motion at 14-23.) In Thomas's view, his attorneys should have impeached Officer McInerney, a witness against him at trial, with evidence that the officer "planted" crack cocaine on a defendant in a previous case. (Memorandum in Support of Petitioner's Motion at 15.) The short answer to this assertion is that there was no evidence that Officer McInerney engaged in this misconduct. The judge in the case to which Thomas refers concluded that the defendant was not guilty–not because Officer McInerney "planted" crack on him, but because McInerney truthfully testified that he never saw the defendant touch or be in possession of the drugs recovered by the police and introduced into evidence against the defendant at trial.

13

(*See People v. Kendrick,* 96 CR 08714, Ex. N to Petitioner's Motion.) Thomas's attorneys could not have used this evidence to impeach Officer McInerney.

Nor has Thomas identified a basis on which Officer Clark could have been effectively impeached. Thomas urges that Officer Clark's grand jury statement is inconsistent with his trial testimony: specifically, Clark told the grand jury that Thomas "walked up" to War and Thompson to ask whether they had run out of narcotics, but testified at trial that Thomas *yelled* to War "are you out?" This minor difference between the two statements could not have effectively cast doubt on Officer Clark's truthfulness. Nor could Tyrone Thompson's grand jury testimony have been used effectively for this purpose. (Memorandum in Support of Petitioner's Motion at 17-18.) Thompson testified that he did not see Thomas provide War with any drugs; but the fact that Thompson did not observe this does not mean that the officer could not have seen it. Significantly, Thompson also testified to the grand jury that Thomas ran a drug sale operation on the 800 block fo 50th Place and that he (Thompson) worked for Thomas, selling drugs and acting as a lookout for the presence of police. (Grand Jury Testimony of Tyrone Thompson, Ex. F to Petitioner's Motion, at 249-51, 253.) Given the possibility that use of some portions of Thompson's grand jury would have "opened the door" to this damaging material, Thomas's attorneys' failure to introduce Thompson's grand jury testimony at trial could not constitute ineffective assistance.

Thomas also asserts that his attorneys should have called Thomas's brother to testify that on one of the occasions where the officers observed a drug transaction, September 5, 1999, Thomas was attending a family barbeque at his grandmother's house and was arrested without probable cause. (Memorandum in Support of Petitioner's Motion at 21; Iran Thomas Affidavit, Ex. D to Petitioner's Motion.) Iran Thomas's affidavit offers no basis for his conclusion that the arrest was without cause, however, and would not have impeached the officer's testimony. Similarly, Thomas contends his attorneys should have offered evidence that he was assaulted by police officers following his arrest on September 7, 1999, but the evidence he offers in support of that

14

claim is the affidavit of his sister, Donita, which rests on Thomas's own hearsay statements to her. (Memorandum in Support of Petitioner's Motion at 16; Donita Thomas Affidavit, Ex. C to Petitioner's Motion.) Such evidence, had it been admissible at all, would likely have been viewed with skepticism by the jury, given the witness's familial relationship to the defendant. Counsel's failure to present it does not constitute ineffective assistance. *See, e.g., Crisp v. Duckworth*, 743 F.2d 580, 585 (7th Cir. 1984) (refusing to find prejudice for ineffective assistance purposes when attorney failed to present witnesses who were not independent). Moreover, counsel does not have an obligation to present every possible witness, and is expected only to call those witnesses who would offer competent, admissible and non-cumulative testimony. *United States v. Valenzuela*, 261 F.3d 694, 699-700 (7th Cir. 2001).

Thomas finally argues that the court should consider the cumulative effect of his attorneys' purported errors. He refers to *United States v. LeShore*, 543 F.3d 935 (7th Cir. 2008), which teaches that where two or more errors are committed in the course of a trial, the court should consider whether, in light of the record as a whole, the errors denied the petitioner a fundamentally fair trial. *Id.* at 942. For the reasons already explained, the court sees no error in counsel's performance, but the purported errors did not, in any event, affect the outcome of the trial. This claim of ineffective assistance is dismissed.

## II.     Prior Convictions on Appeal

Thomas has notified the court that he has appealed the earlier convictions that this court relied on to support the "career offender" sentencing enhancement. Thomas purports to reserve his right to challenge that enhancement, but has not done so in this petition, and the court therefore declines to address it.

## **CONCLUSION**

For the reasons set forth above, Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is denied.

ENTER:

Dated: October 22, 2010

_____
REBECCA R. PALLMEYER
United States District Judge